

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00125-CV

**GL LOGISTICS CO., LLC,**
Appellant

v.

Erika **FLORES** and Christian Flores,
Appellees

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2021CVA000265D4
Honorable Oscar J. Hale, Jr., Judge Presiding

Opinion by:  Liza A. Rodriguez, Justice

Sitting:  Patricia O. Alvarez, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: August 31, 2021

AFFIRMED

GL Logistics Co., LLC appeals[1] the trial court's entry of a temporary injunction order prohibiting it from destroying certain physical evidence concerning the motor vehicle accident on which Erika and Christian Flores's personal injury lawsuit is based. We affirm the trial court's temporary injunction order.

---

[1] The other defendants in the underlying litigation, Joel Perez Ortega, MAS Enterprises, LLC, and METEX Developments, Corp., did not appear at the temporary injunction hearing and did not join the appeal of the temporary injunction order.

**BACKGROUND**

The underlying litigation arises out of alleged injuries sustained by Erika Flores and Christian Flores (referred to collectively as "Flores") during a collision between their vehicle and a commercial tractor-trailer driven by Joel Perez Ortega and owned by GL Logistics. The accident occurred on San Dario Avenue in Laredo on January 17, 2021 as the tractor-trailer was attempting to turn into a commercial business. Flores' Original Petition was filed on February 8, 2021, and included an application for a temporary restraining order and injunction to preserve "existing material evidence" that could be used to reconstruct the accident, namely, a surveillance video from the premises where the accident occurred. On February 11, 2021, the trial court granted a temporary restraining order (the "TRO") prohibiting GL Logistics and the other defendants from

> altering, selling, destroying, or disposing of any physical evidence in their possession from the incident in question including, but not limited to the Defendants' surveillance video of its/their premises, including but not limited to video capturing San Dario Avenue and relevant surrounding areas where the incident occurred, for the day of the incident in question, January 17, 2021.

On the date scheduled for the injunction hearing, GL Logistics agreed with Flores to extend the TRO for an additional fourteen days. The First Amended Temporary Restraining Order extending the TRO set a March 16, 2021 hearing date "to determine whether the Temporary Restraining Order should be made a Temporary Injunction pending a full trial on the merits."

On March 16, 2021, the trial court conducted an evidentiary hearing via Zoom on Flores' request for a temporary injunction. Counsel for GL Logistics informed the court that he had provided Flores' counsel with the requested surveillance video, as well as an invoice dated February 9, 2021 showing that GL Logistics sold the tractor truck involved in the accident to a Mexican entity. Defense counsel noted the sale of the truck occurred before the TRO was entered

on February 11, 2021 and before counsel was retained.[2] Counsel represented, "It's one of those things where they, you know, had a tractor just sitting there in the normal course of business. It was sold as a lot of ten." Counsel for GL Logistics further represented to the court that the company had now been instructed to preserve any evidence related to the accident and there was no need for the extraordinary remedy of an injunction. With respect to the sale of the truck, counsel argued the doctrine of spoliation provided an adequate remedy at law to plaintiffs.

Counsel for Flores responded that not only was the truck itself relevant to reconstruction of the accident and liability issues, but the data from the truck and the video of the accident from the premises were also necessary and relevant. With respect to the video provided by GL Logistics' counsel, Flores' counsel stated it was a seven-second clip, "with a pause in the middle," that is "a cell phone recording of the monitor of the accident." The trial court viewed the video via Zoom. Flores' counsel argued that preservation and recovery of the original and complete surveillance video was necessary and that one of the three corporate defendants had control over the premises but it was unclear which at that time.[3] Counsel for GL Logistics responded the company did not have control over the surveillance equipment and provided the portion of the video it had in its possession. Flores' counsel also showed the trial court a series of preservation-of-evidence letters sent by Flores' previous counsel to the three corporate defendants on January 19 and 21, 2021, within a few days of the accident (referred to as the "Solis Letters").[4] Counsel argued that, based on GL Logistics' sale of the truck after receipt of the preservation-of-evidence notice, there is "a legitimate concern that this evidence will not be and has not been adequately preserved." Counsel for GL Logistics responded that, even if the preservation-of-evidence letter

---

[2] Exhibit I is a GL Logistics invoice dated February 9, 2021 showing a tractor truck with the same VIN number listed on the accident report (Exhibit A) was sold to a Mexican entity.

[3] Exhibit G is a photograph of a GL Logistics sign at the entrance to the property where the accident occurred.

[4] Exhibit B-3 is a copy of a certified letter sent to GL Logistics at the address of its registered agent.

was received, the letter was written in English and the company is a "Spanish speaking only entity." Flores' counsel replied, "there was an opportunity to understand that letter" and asserted the letter and subsequent sale of the truck constituted evidence that "there is a problem with preserving evidence in the case."

Later that day, the trial court issued its temporary injunction order prohibiting GL Logistics and the other corporate defendants from "altering, selling, destroying, or disposing of any physical evidence in their possession from the incident in question including, but not limited to:

(1) The Defendants' surveillance video of its/their premises, including but not limited to, video capturing San Dario Avenue and relevant surrounding areas where the incident in question occurred, for the day of the incident in question, January 17, 2021, for a period of two hours before, and two hours after, the incident in question;

(2) The 18-wheeler rig being operated at the time of the incident in question;

(3) The component parts and accessories of both the tractor and trailer;

(4) All items of the load, cargo, freight or shipment in or on or being transported by the tractor and trailer, including any parts of same that failed or malfunctioned or broke;

(5) ECM and all other event data recorders of any and all kind for the tractor and trailer involved in the incident in question; and

(6) All photographs, video, and other photographic images of the above items.

In support of the injunction, the trial court found evidence of a cause of action against the defendants, a probable right to the relief sought, and that immediate and irreparable harm would result to plaintiffs in the absence of a temporary injunction. As to imminent harm, the order states, "Plaintiffs will be irreparably injured because physical evidence in support of their claims, which is in the care, custody, or control of these Defendants, will or probably may be lost or altered or destroyed, preventing successful prosecution of this case." GL Logistics appeals. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4).

**DISCUSSION**

On appeal, GL Logistics argues the trial court abused its discretion by entering the temporary injunction order because (i) it improperly took judicial notice of alleged facts in the exhibits, (ii) there was no evidence of imminent harm and an adequate remedy at law exists, (iii) the injunction order is vague and overbroad, and (iv) the order exceeds the relief requested.

*Temporary Injunction*

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Blackthorne v. Bellush*, 61 S.W.3d 439, 442-43 (Tex. App.—San Antonio 2001, no pet.) (only issue at injunction hearing is whether status quo should be preserved). The status quo is defined as "the last, actual, peaceable, non-contested status [that] preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, an applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*; *City of San Antonio v. Vakey*, 123 S.W.3d 497, 499 (Tex. App.—San Antonio 2003, no pet.). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204. When an injunction is based on equity, the applicant must further show that no adequate remedy at law exists. *Butnaru*, 84 S.W.3d at 210.

A trial court has broad discretion in deciding whether to grant or deny a temporary injunction and its ruling is subject to reversal only for a clear abuse of discretion. *Butnaru*, 84 S.W.3d at 204; *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). An appellate court views the evidence and all legitimate inferences in the light most favorable to the trial court's order and will

uphold the order unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 211; *Blackthorne*, 61 S.W.3d at 443. We may not substitute our judgment for that of the trial court, even if we would have reached a contrary conclusion. *Butnaru*, 84 S.W.3d at 211. A trial court does not abuse its discretion if some evidence reasonably supports its decision. *Id.*; *Vakey*, 123 S.W.3d at 501.

### *Judicial Notice of Exhibits*

GL Logistics contends the injunction order must be reversed because the trial court improperly took judicial notice of "alleged facts" stated in exhibits presented by Flores during the injunction hearing, in violation of Texas Rule of Evidence 201. *See* TEX. R. EVID. 201 (governing judicial notice of an adjudicative fact). Under Rule 201, a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b). "[T]he trial court may not take judicial notice of the *truth* of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file." *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *1 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). When evidence is the subject of improper judicial notice, it amounts to no evidence. *Paradigm Oil Co. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 540 (Tex. App.—San Antonio 2004, pet. denied).

The only mention of judicial notice occurred at the end of the injunction hearing when Flores' counsel stated, "[t]he only other thing I wanted to ask, Judge, was through Zoom - - I might have - - I should have said this from the beginning. Can I submit what I marked as Exhibits A through J, just to make it part of the record, as soon as we get off the hearing, if you will take

judicial notice of Exhibits A through J." The trial court replied, "[t]he court will take judicial notice of those exhibits, yes." Flores' counsel replied, "I will e-file them shortly, thank you."

The record shows GL Logistics raised no objection to the trial court's statement that it would "take judicial notice" of the exhibits; therefore, any error was not preserved for review. TEX. R. APP. P. 33.1(a). Even if preserved, the context of the brief exchange reflects that Flores' counsel merely requested that the trial court take judicial notice of the fact that the exhibits were being e-filed that day so they would be included in the record. The clerk's record contains two cover letters from Flores' attorney dated March 16, 2021 referencing the physical exhibits enclosed for filing in the court's record.[5] There is nothing in the record to show the trial court took judicial notice of the truth of the statements in the exhibits. *See In re K.J.G.*, 2019 WL 3937278, at *1 (court may properly take judicial notice that a document was filed).

GL Logistics also seems to suggest that none of the exhibits were admitted at the injunction hearing; therefore, there is no evidence in support of the injunction. While the trial court did not formally state that Exhibits A through J were admitted during the Zoom hearing, it viewed the exhibits through screen-sharing via Zoom. GL Logistics raised no objection to any of the exhibits during the hearing or to their submission for filing at the end of the hearing. Further, the written injunction order states, "No objections were made to the evidence *admitted* during the hearing." (emphasis added). We conclude that, even if preserved, GL Logistics' arguments are without merit.

---

[5] The exhibits consist of Exhibit A (certified copy of the accident report); Exhibits B#1-4 (copies of the preservation-of-evidence letters sent to the corporate defendants); Exhibit C (warranty deed showing sale of the property where the accident occurred from METEX Development to MAS Enterprises); Exhibit D (Webb County Appraisal District record showing METEX's ownership of the property); Exhibit E (service of citation on the corporate defendants); Exhibit F (emails regarding Rule 11 extension of TRO); Exhibit G (photograph of GL Logistics sign at entrance to the property); Exhibit H (photograph of flash drive with video clip); Exhibit I (bill of sale invoice for tractor truck); and Exhibit J (emails between counsel regarding preservation and production of the surveillance video and other evidence).

***Imminent Harm and Adequate Remedy at Law***

GL Logistics argues there was no evidence of imminent harm to support the issuance of the temporary injunction, only speculation about destruction of evidence. GL Logistics also contends Flores has an adequate legal remedy for any destruction of evidence through spoliation law and discovery sanctions. *See Blackthorne*, 61 S.W.3d at 444 (probable injury element necessary for injunctive relief includes imminent harm, irreparable injury, and no adequate remedy at law for damages).

Flores replies that there was substantial evidence of imminent harm, as well as actual harm, based on GL Logistics' admission it sold the truck involved in the collision on the day after suit was filed. Although counsel for GL Logistics represented the sale occurred in the normal course of business, the trial court in its role as the trier of fact could have disbelieved the proffered reason for the sale and drawn reasonable inferences from the sale and its timing. *See Butnaru*, 84 S.W.3d at 204, 211 (appellate court views the evidence and inferences in the light most favorable to the trial court's order and may not substitute its own judgment). The sale of the truck to a foreign entity, making access to and inspection of the truck difficult if not impossible, also supports a reasonable inference that GL Logistics disposed of the truck to hinder successful prosecution of a lawsuit and there is a substantial risk it may dispose of or destroy other physical evidence related to the accident. Moreover, the fact that the truck sale occurred after the Solis Letter (preservation-of-evidence notice) was sent to GL Logistics' registered address in Hidalgo, Texas further supports an inference that the reason GL Logistics chose to sell the truck at that particular time was to impede successful prosecution of a lawsuit. Again, the trial court could have disbelieved defense counsel's representation that no one at GL Logistics understood the Solis Letter because it was written in English.

As to the short cell phone recording of the surveillance video produced by GL Logistics, the trial court could have disbelieved its representation that it did not have possession of or access to the original, complete surveillance video and reasonably inferred the original video was at risk of being altered or destroyed. We conclude the trial court did not abuse its discretion in finding there was sufficient evidence of imminent and irreparable harm to Flores "because physical evidence in support of [plaintiffs'] claims, which is in the care, custody, or control of these Defendants, will or probably may be lost or altered or destroyed, preventing successful prosecution of this case."

GL Logistics next asserts that the legal remedies available under spoliation law and Rule 215 of the Texas Rules of Civil Procedure provide adequate relief to Flores in the event evidence is not preserved. GL Logistics devotes a large portion of its briefing to a discussion of the doctrine of spoliation under which a party may move for sanctions and/or submission of a jury instruction stating that evidence intentionally destroyed is presumed to have been unfavorable to the spoliator. *See Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 14 (Tex. 2014) (discussing elements of spoliation and applicable analysis). GL Logistics also asserts it was denied the due process inherent in a spoliation determination.

However, the issue of spoliation was not before the trial court at the injunction hearing, and counsel for GL Logistics acknowledged as much. After stating, "we don't know what is missing or not missing at this time yet other than the truck," counsel represented that the company had been instructed to preserve "all the evidence it currently has" and if the company failed to preserve evidence relevant to the accident that would present "a spoliation issue to be addressed at a *later* time." (emphasis added). Flores' counsel replied that the ability to pursue spoliation sanctions and/or a jury instruction at a later time did not provide a remedy for "what is at issue today . . . the lost opportunity to inspect the truck and the need to preserve the original surveillance

video and other physical evidence." A spoliation remedy addresses the harm that arises after evidence has already been "lost, altered, or destroyed;" it does not pertain to future preservation of evidence. *See Brookshire*, 438 S.W.3d at 18. The purpose of an injunction is to maintain and preserve the status quo, including the preservation of evidence. *Butnaru*, 84 S.W.3d at 204; *see, e.g.*, *Blackthorne*, 61 S.W.3d at 443-44 (affirming a temporary injunction prohibiting the disposition of stock). A remedy at law is only adequate if it "is as complete and as practical and efficient to the ends of justice and its prompt administration as is equitable relief." *Blackthorne*, 61 S.W.3d at 444. We conclude the future potential remedy of spoliation sanctions was not an adequate or complete remedy in this situation where equitable relief prohibiting the alteration, disposition, or destruction of evidence was more prompt, practical, and efficient. *See Butnaru*, 84 S.W.3d at 210.

Similarly, Rule 215 provides a procedure and remedy for a party's abuse of the discovery process. *See* TEX. R. CIV. P. 215 (sanctions or order compelling discovery); *see also Brookshire*, 438 S.W.3d at 20 (noting spoliation is a particularized form of discovery abuse). Here, as the parties note in their briefs, the case was "in its infancy," no pretrial scheduling order had yet been entered, and no discovery was yet due. Therefore, the legal remedies available under Rule 215 did not address the immediate preservation-of-evidence issue before the court at the injunction hearing.

We conclude that there was sufficient evidence of imminent and irreparable harm absent an injunction and that Flores did not have an adequate remedy at law to prevent the future alteration, disposition, or destruction of physical evidence relevant to the accident.

### *Injunction Order is Vague and Overbroad*

GL Logistics next argues the language in the injunction order is vague and overbroad, and requires it to engage in guesswork to determine what evidence is covered by the injunction.

Under Rule 683, an order granting an injunction or a restraining order must "set forth the reasons for its issuance," "be specific in terms," and "describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained." TEX. R. CIV. P. 683. An injunction order must be "as definite, clear, and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing." *San Miguel v. City of Windcrest*, 40 S.W.3d 104, 109-10 (Tex. App.—San Antonio 2000, no pet.) (quoting *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 291 S.W.2d 697, 702 (1956)). While an injunction order may not be too vague, it need not specifically identify every act that might constitute the prohibited action. *Id.* The injunction order must be "in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (which is far more likely) in somewhat different form calculated to circumvent the injunction as written." *Id.* (internal citation omitted).

GL Logistics first challenges the injunction order's use of the term "the incident in question," arguing the order fails to define the term which is so vague it requires reference to the complaint to determine what "the incident" means. The text of the injunction order first tracks the language from the TRO and Amended TRO prohibiting the corporate defendants from disposing of or destroying "any physical evidence in their possession from the incident in question including, but not limited to:" and then lists six types of physical evidence. The first item listed is the surveillance video from the premises "for the day of the incident in question, January 17, 2021." Thus, the order defines "the incident in question" as occurring on the day of the motor vehicle accident between Flores and the GL Logistics tractor-trailer which is the basis of the lawsuit. Indeed, GL Logistics concedes in its brief, "candidly, the parties could infer that the incident in

question refers to the collision between Appellees' and Appellant's vehicle[s]." Moreover, GL Logistics never objected that the language in the TRO and Amended TRO (to which it agreed) was so vague that it could not determine what "the incident in question" meant. We conclude the injunction order's use of the term "the incident in question" is not unduly vague and was understood by the parties without reference to the complaint.

GL Logistics also asserts the phrase "any physical evidence in [the defendants'] possession from the incident in question, including but not limited to …" is vague and overbroad because it encompasses physical evidence it *might* have rather than evidence it was known to have in its possession at the time of the injunction order. Again, that language in the injunction order repeats the same language used in the TRO and Amended TRO to which GL Logistics agreed. GL Logistics specifically complains that the trial court's injunction order "assumed the existence of ECM data." With respect to ECM data and "other event data recorders of any and all kind," the terms of the injunction limit the data to be preserved to that data in existence and in the possession of GL Logistics from the particular tractor and trailer involved in the accident on January 17, 2021. We conclude the language of the injunction is sufficiently specific and limited in that regard. *See, e.g., Lasser v. Amistco Separation Products, Inc.*, No. 01-14-00432-CV, 2014 WL 4952501, at *6-7 (Tex. App.—Houston [1st Dist.] Oct. 2, 2014, no pet.) (mem. op.) (holding injunction order was sufficiently specific where it described specific categories and gave examples of information considered "confidential information" and "trade secrets," and rejecting argument that the definitions were overly broad because they stated "includes but is not limited to …"). We conclude the injunction order is reasonably detailed and specific as to the physical evidence to be preserved by GL Logistics, restricting it to evidence in its possession from the January 17, 2021 accident between Flores' vehicle and GL Logistics' tractor-trailer truck.

GL Logistics also argues the injunction order goes beyond maintaining the status quo and is framed so broadly that it infringes on its lawful right to conduct business. "[A]n injunction must not be so broad as to enjoin a defendant from activities that are a lawful and proper exercise of his rights." *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 221 (Tex. App.—Dallas 2005, no pet.). GL Logistics specifically challenges part (4) of the injunction order prohibiting it from altering, selling or disposing of "all items of the load, cargo, freight or shipment in or on or being transported by the tractor and trailer" from the accident, "including any parts of same that failed or malfunctioned or broke." GL Logistics argues that portion of the injunction applies to "any cargo that has ever been held in the trailer alleged [sic] involved in the 'incident in question,' regardless if that happened two years prior to the 'incident in question.'" However, the plain terms of the injunction order limit the cargo items to those on the tractor-trailer at the time of the incident in question, i.e., the January 17, 2021 accident between Flores and the GL Logistics tractor-trailer. We therefore overrule GL Logistics' argument that part (4) of the order is overbroad.

### *Exceeds Scope of Requested Relief*

Last, GL Logistics argues the scope of the injunction order exceeds the relief requested because Flores' application for a TRO and injunction only requested preservation of the surveillance video of the collision and undefined "physical evidence" related to the accident. *See* TEX. R. CIV. P. 301 (trial court may not grant relief in the absence of pleadings supporting such relief); *Webb v. Glennbrook Owners' Ass'n*, 298 S.W.3d 374, 385 (Tex. App.—Dallas 2009, no pet.). GL Logistics specifically challenges the injunction's inclusion of the truck and its data, arguing it was agreed at the hearing that the truck need not be subject to an injunction because it had been sold.

The transcript of the injunction hearing shows that Flores' counsel expressly sought an injunction for more than just the original surveillance video from the property. Counsel stated, "we are trying to preserve the video that actually encompasses and shows the accident as well as the truck itself for inspection which has now been shipped to Mexico, and the data which comes from that truck which we don't know where it is." At the end of the hearing, the trial court sought to clarify whether Flores was asking for the injunction to focus only on the "video and other data," or to still include the truck that had apparently been sold. Flores's counsel replied that an injunction was needed "to the extent they still have the data from the truck and to the extent, I suppose, they still do have the truck . . . ." Counsel continued, "[b]ut we're just asking that to the extent those things are in possession and control of the Defendants, that we have a temporary injunction to enjoin from the destruction and movement, that sort of thing, of those items." The trial court ruled that the temporary injunction would extend to any videos or other data associated with the tractor-trailer rig and in the defendants' possession. GL Logistics raised no objection to the ruling.

We conclude that, based on the injunctive relief pled for and the evidentiary hearing, GL Logistics had fair notice that Flores was seeking an injunction for the tractor-trailer rig involved in the accident to the extent any part of it was in any of the defendants' possession, any data associated with the truck and/or trailer on the day of the accident, and any video or other images of the accident and the tractor-trailer (including its load, if any) involved in the accident.

## CONCLUSION

Based on the foregoing reasons, we affirm the trial court's temporary injunction order.

Liza A. Rodriguez, Justice